UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:18cr210(SRU) |
| MARK ROHRER | : | March 26, 2019 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in aid of sentencing. The defendant, Mark Rohrer, is scheduled to be sentenced on April 2, 2019.

"The Website" was an online child pornography site on the darknet that was used to host and distribute images of child pornography. Users could purchase and download these images using relatively anonymous cryptocurrency to disguise and hide their true identities. Many of the images hosted on The Website depicted the horrific sexual abuse of children. The defendant, Mark Rohrer, through the use of a Bitcoin wallet, was one individual who purchased and downloaded files of child pornography from The Website. As a result of his actions, Mr. Rohrer faces a mandatory term of imprisonment of 60 months. The Government respectfully requests that this sentence be imposed, along with a term of supervised release of five years, along with mandatory restitution that is owed to one of the victims of the child pornography that Mr. Rohrer received.

**I.     THE OFFENSE AND RELEVANT CONDUCT**

The facts of the offense do not appear to be in dispute, and are drawn from paragraphs 7 through 15 of the Pre-Sentence Report ("PSR"), Doc. 26.

"The Website," was an online child-pornography website located on a darknet with a Tor-based web address.[1]  Tor is a computer network designed specifically to facilitate anonymous communications over the Internet.  Tor effectively bounces a user's communications around a distributed network of relay computers all over the world, making conventional methods of identifying users obsolete.  A user on the Tor network must know a website's particular web address to visit it; the user may not conduct a search using a search engine like Google to find a website on the Tor network because the sites on the Tor network are not indexed.  In order to find a web address, a Tor user must obtain the web address from another user, or by viewing postings that somehow identify the web address.  All darknets require specific software or network configurations, such as Tor, to access them.

At all times relevant, The Website was located on a darknet with a Tor-based web address known to law enforcement.  The Website was used to host and distribute thousands of image and video files of child pornography and child erotica that could be downloaded by site users.  The landing page of The Website clearly stated: "Do not upload adult porn."

---

[1] The actual name of the website is known to law enforcement but is not being publically identified.

Any user had the ability to create an account on The Website by creating a username and password. Once the user had an account, he/she could see previews of images and videos available for download. In order to download images and videos from the site, the user had to use "points" given to them by The Website. Points could be obtained by uploading videos of child pornography to the site, by referring new users to the site, or by purchasing through the use of Bitcoin. The Website assigned users a unique Bitcoin address to which that user could send Bitcoin for the purpose of purchasing points.

Each video available for download on The Website had a title, a description (if added by the uploader), "tags" with further descriptions of the video which enable users to more easily locate a particular category of video using The Website's search function, and a preview thumbnail image that contained unique still images taken directly from the video. As of February of 2018, The Website had more than 125,000 unique videos available for downloading. In order to prevent duplicate videos from being uploaded, The Website provided an MD5 hash-value check in order for the user to compare a video to other videos previously uploaded to the site. The Website only allows users to upload videos that had not previously been uploaded to the site. According to law enforcement's viewing of The Website, the videos stored on The Website amounted to over seven terabytes of data.

Prior to taking down The Website, law enforcement agents acting in an undercover capacity purchased multiple files of child pornography, including images of preteens and toddlers engaged in sexual activities with adults.

In March of 2018, foreign law enforcement executed a search warrant at the home of The Website administrator and seized the server. A copy of the server was provided to the Department of Homeland Security Investigations, who obtained a federal search warrant from the United States District Court for the District of Columbia to review the forensic image of the server.

An analysis of The Website server showed a user account with the name "sudsy" that had been assigned a unique Bitcoin address to send payments to The Website and the download of seven video and image files in January of 2016. The names of the downloaded files contained well-known and graphic terms for child pornography, for example one file indicating the name of a female engaging in sex with the description "young;" one file tagged with the description of a sexual act followed by "12yo," as a reference to a 12 year old; and one file tagged with a description of a sexual act followed by the term "jailbait."

A subpoena to a United States-based virtual currency exchange, Coinbase, revealed that the unique Bitcoin address associated with the user name "sudsy" was linked to an active Bitcoin account in the name of the defendant, Mark Rohrer. A subpoena for Rohrer's Coinbase account showed that he had sent Bitcoin to The Website administrator in January of 2016. The Coinbase information also revealed an IP address used to access the account, which IP address came back to Comcast Communications. Comcast then advised that the IP address was assigned to its customer, Mark Rohrer.

The United States District Court, the Hon. Robert A. Richardson, U.S.M.J., approved a search warrant for Rohrer's home in West Hartford, which was executed on April 3, 2018.  Agents seized two computers and other media.

While Rohrer's computers have sophisticated encryption codes (which have not yet been significantly bypassed by law enforcement), agents were able to confirm receipt of four files of child pornography downloaded from The Website, along with 29 other identified images of child pornography and child erotica.

The parties agree that the defendant possessed at least 150 images of child pornography pursuant to U.S.S.G. §2G2.2(b)(7)(B) based upon the image and videos files identified by law enforcement in the non-encrypted areas of the seized computers.  The parties agree that some of these images depict children under the age of 12.  One of the videos downloaded from The Website depicts bestiality.

One of the images received by Mr. Rohrer is of an identified victim, identified as "Violet," whose counsel has submitted a restitution request of $10,000 in connection with sentencing.  *See* PSR ¶ ¶ 16-20.

## II.   THE PRE-SENTENCE REPORT AND GUIDELINES CALCULATION

The Government concurs with the Guidelines calculation set forth in the Pre-Sentence Report, paragraphs 24 through 36.

The defendant's base offense level is 22 under U.S.S.G. § 2G2.2(a)(2).  Two levels are subtracted because there is no evidence that Mr. Rohrer distributed child pornography.  *See* U.S.S.G. § 2G2.2(b)(1).  Two levels are added because the material involved a minor who was younger than the age of 12.  *See* U.S.S.G. § 2G2.2(b)(2).

Two additional levels are added because the offense resulted from the defendant's use of a computer, U.S.S.G. § 2G2.2(b)(6), and three levels are added because the defendant possessed at least 150 images of child pornography. *See* U.S.S.G. § 2G2.2(b)(7)(B). With three levels subtracted for acceptance of responsibility, the total offense level is 24.

The defendant is in criminal history category I. *See* PSR ¶ 38.

With a total offense level of 24, and a Criminal History Category of I, the advisory Guidelines range is 60 to 63 months of imprisonment. The defendant also faces an advisory range of five years to life of supervised release. *See* U.S.S.G. § 5D1.2(b)(2). A $5,100 special assessment is required under 18 U.S.C. §§ 3013 and 3014, along with mandatory restitution under 18 U.S.C. § 3663A.

### III.   DISCUSSION

After the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *See Rita v. United States*, 127 S. Ct. 2456, 2459 (2007). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005).

The Government respectfully requests that a term of imprisonment of 60 months be imposed in light of all of the section 3553(a) factors.

### A. The Nature and Circumstances of the Offense

Criminal offenses involving the abuse and sexual exploitation of children are among the most serious crimes that the Court sees. The purchase and downloading of images and videos of child pornography perpetuates and encourages both the physical and sexual abuse of children and then the continued exploitation of those victims. As the Supreme Court recognized many years ago: "The distribution of [child pornography] is intrinsically related to the sexual abuse of children in at least two

ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." *New York v. Ferber*, 458 U.S. 747, 759 (1982); *see also United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("Not only are children seriously harmed— physically, emotionally, and mentally—in the process of producing such pornography, but that harm is exacerbated by the circulation, often for years after the fact, of a graphic recoding of the child's exploitation and abuse."); *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) ("Although society at large is also a victim of these crimes, the primary, identifiable victim is the child portrayed, who must live with the knowledge that adults . . . can pull out a picture or watch a video that has recorded the abuse of that child at any time.").

This point is driven home by the submission from the parents of one of the victims in this case, who note that while Mr. Rohrer faces a sentence of five years, their daughter has been given a "life sentence," because she will have to constantly deal with the fact that images of her abuse are and will continue to circulate on the internet and darknet. "[T]he noted digital revolution may actually aggravate child pornography crimes insofar as an expanding market for child pornography fuels greater demand for perverse sexual depictions of children, making it more difficult for authorities to prevent their sexual exploitation and abuse." *Reingold*, 731 F.3d at 217.

The nature of the recovered images in this case do not mitigate the severity of Mr. Rohrer's conduct, as they depict the sexual abuse of girls clearly under the age of 12 and acts of bestiality.

**B. Mr. Rohrer's History and Characteristics**

Mr. Rohrer has never been in trouble with the law before and this is his first criminal conviction. He seems to have otherwise lived a law-abiding life. On the other hand, Mr. Rohrer was successful in keeping this crimes hidden from view through his use of the darknet, anonymous crypto currencies, and sophisticated encryption on his electronic devices.

Mr. Rohrer's background, discussed at paras. 43 to 45 of the PSR, certainly begs the question as to if and to what extent his own experiences have influenced the conduct that brings him before the Court. We do not yet have an answer to that question. The Government does note, however, that the focus of Mr. Rohrer's conduct in this case appeared to be the sexual abuse of pre-pubescent females and, accordingly, his personal experiences might not necessarily correlate with his conduct as an adult. Moreover, Congress has decided that child pornography offenses like these are sufficiently serious of a crime "as to require at least a five-year sentence even for the most sympathetic defendant." *Reingold*, 731 F.3d at 220. Given Mr. Rohrer's prompt acceptance of responsibility and the positive actions he has taken since this case began, the Government agrees that a sentence of the mandatory minimum of 60 months of imprisonment is appropriate.

### C. Promotion of Respect for the Law and Just Punishment

A sentence of 60 months of imprisonment appropriately promotes respect for the law and provides just punishment. The Second Circuit has explained that this type mandatory minimum reflects not the judgement of a single individual but instead "the collective wisdom of the Legislature, and, as a consequence, the citizenry," concerning this type of serious crime. *Reingold*, 731 F.3d at 220.

Next, a Guidelines sentence of 60 months accomplishes the goal of general deterrence by sending the clear and unequivocal message that we as a society cannot and will not tolerate the sexual abuse and exploitation of children and that everyone involved in those types of offenses—from the producers of child pornography to those, like Mr. Rohrer, who provide the commercial demand for such images—will be severely punished. *See United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) ("General deterrence is crucial in the child pornography context."); *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the demand for it and so the more will be produced.").

Finally, the sentence imposed must deter Mr. Rohrer from engaging in this type of criminal conduct in the future. The Government is hopeful that Mr. Rohrer's recent strives in accepting responsibility for his mental health will continue.

### D. The Need for Correctional Treatment

The Government concurs with the PSR's conclusion that Mr. Rohrer would benefit from participation in sex offender treatment programming offered by the

Bureau of Prisons, *see* PSR ¶ 74, and that Mr. Rohrer would also benefit from substance abuse treatment and continued mental health counseling.

### E. Restitution

As set forth in the plea agreement, the Court must order that the defendant make restitution under 18 U.S.C. § 2259, and the Government reserved its right to seek restitution on behalf of victims. *See* Plea Agreement at 3. The Supreme Court concluded that persons convicted of child pornography offenses are liable for restitution "in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses[,]" and the Court set forth a framework of factors a district court should consider in determining the loss amount. *Paroline v. United States*, 134 S.Ct. 1710, 1716-17 (2014).

To date, the Government has received a request for restitution from one victim of the defendant's conduct, "Violet," as outlined in paragraphs 16 to 20 of the PSR. To date, the Government does not know the defendant's position on the request for restitution in the amount of $10,000. If an agreement is not reached before or at sentencing, the Government requests that the Court set a date for the final determination of victim's losses in this case. *See* 18 U.S.C. § 3664(d)(5).

### IV. **CONCLUSION**

Thus, for the reasons set forth above, and based upon the facts currently before the Court, the Government respectfully submits that the Court impose the mandatory term of 60 months of imprisonment.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/
Sarah P. Karwan
Federal Bar No. ct22911
Douglas P. Morabito
ASSISTANT U.S. ATTORNEYS
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5376
sarah.p.karwan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2019 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/

SARAH P. KARWAN
ASSISTANT UNITED STATES ATTORNEY